MANSFIELD, Plaintiff in Error, v. MANSFIELD, Defendant in Error.

1. Under the revised code of 1845 a decree of divorce, obtained by fraud, might be set aside upon a petition for a review.
2. Section 14 of the act concerning divorce and alimony (R. C. 1855, p. 666) is applicable only to suits for divorce commenced after May 1, 1856.

*Error to Jasper Circuit Court.*

*Mc Coy* and *Hendricks*, for plaintiff in error.

I. The court erred in permitting the bill of review to be entertained and in setting aside the judgment. (R. C. 1855, p. 666, sec. 14.)

*F. P. Wright*, for defendant in error.

I. The petition did not state sufficient ground for divorce. A final decree was improperly taken at the first term. The decree for divorce was obtained by fraud. (See Vanmeter

v. Jones' Exec'rs, 2 Green Ch. 523; Loyd v. Mansell, 2 P. W'ms, 73; Bradish v. Gee, 1 Ambl. 229; Lamersdale v. Littledale, 2 Ves. 450.)

NAPTON, Judge, delivered the opinion of the court.

The only ground upon which the judgment of the circuit court in this case is sought to be reversed is the 14th section of the act concerning divorce and alimony in the revised code of 1855. (R. C. 1855, p. 666.) That section provides that "no petition for review shall be allowed of any judgment for divorce rendered in any case arising under this act, any law or statute to the contrary notwithstanding; but there may be a review of any order or judgment touching the alimony of and maintenance of the wife, and the care, custody and maintenance of the children, or of any of them, as in other cases." This statute did not go into effect until May, 1856. This suit for divorce was commenced in April, 1855. The provision is only applicable to proceedings commenced under the act, and consequently has no application to this case.

To what extent the legislature designed to close up the doors of courts of justice against parties to divorce suits by this enactment — whether the grossest frauds perpetrated in *ex parte* proceedings must be understood as perpetuated upon the record, without any power in the courts to give redress— is a question which may hereafter become important. This court has no wish or power to anticipate a decision on this question, nor have I individually any desire to put forward any suggestions of my own. It occurred to me, however, that the facts of this case would furnish a strong commentary upon a very rigid and literal construction of the 14th section above referred to. I state them merely as they stand admitted on the record by demurrer. The plaintiff persuaded his wife to pay a visit to her mother in Illinois, representing to her that her health, which was delicate, would be very much improved by such a trip. No sooner had she started than he institutes a suit for divorce upon the indefinite charge of per-

sonal indignities, consisting of abusive and threatening language. Representing her to be a nonresident, he procures an order of publication, and at the first term of the court, upon proof, as the record states, that he was an injured party, he gets a divorce. In the meantime he had kept up a very affectionate correspondence with his wife, couched in the most loving terms, and had also visited her and persuaded her to remain in Illinois upon assurances that he designed moving there, and that her return to Missouri would be an unnecessary and expensive journey. The wife finally returns to this state and for the first time learns that she is no longer a wife; that she and her children are thrown upon the world without any allowance, and with charges against her reputation and character of which she never before heard. She comes into court within the period allowed by the law as it stood before 1856 and as it still remains in all other cases, and asks to be heard in defence, declaring the utter futility of the charges, and stating her entire ignorance of the whole proceeding from first to last. To this petition the plaintiff demurred, and the circuit court overruled the demurrer. The plaintiff then took a nonsuit.

Of course we could have but one opinion of the merits of this case. Did the statute of 1855 intend that *ex parte* decrees in divorce cases, obtained by fraud, should never be disturbed or looked into ? If the provision were limited to cases where a second marriage intervenes, a motive for such an enactment could be perceived ; but when no new ties have been formed, why put judgments in these cases on any other footing than all other judgments, where they have been brought about by fraud ?

The other judges concurring, judgment affirmed.