EMMA CHILDS, Appellant, v. GEORGE W. CHILDS, Respondent.

January 31, 1882.

A decree of divorce cannot be reviewed on petition after the lapse of the term at which the decree was rendered, where the proceedings were regular and the court had jurisdiction of the parties.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

M. THOMPSON, for the appellant.

W. H. H. RUSSELL, for the respondent.

Thompson, J., delivered the opinion of the court.

The plaintiff brings this suit to set aside a decree made by the court in which this petition was filed, divorcing the defendant from her, and to procure a divorce from him, with alimony. A demurrer to the petition was sustained, and, the plaintiff declining further to plead, judgment was given for the defendant, and the plaintiff has appealed. The substantial averments of the petition and the grounds on which the circuit court sustained the demurrer thereto, are stated in the subjoined opinion by Thayer, J.

" On February 17, 1879, the defendant in this action filed a bill for divorce against his then wife, Emeline Childs, alleging in substance that she had abandoned him without reasonable cause, for the space of more than one year. Service was obtained on the wife by publication, on the usual affidavit that she was a non-resident, and a decree of divorce was rendered in favor of the husband, June 18, 1879. The wife did not appear to defend the action for divorce at any stage of the proceedings ; but, on May 4, 1881, she appeared and instituted the present action, for the purpose of having the former decree of divorce set aside, and a decree awarded in her own favor, together with alimony and other relief. The plaintiff's petition has been demurred to, and the right of the wife to relief, under the facts stated in the petition, is thus called in question. The petition filed by the wife is very lengthy, but it will suffice for the purpose of this decision to state the general character of the averments.

" She alleges that she was married to the defendant in Baltimore, Maryland, in the year 1862, and that she continued to live with him until the year 1869, when he abandoned her and her child at Norfolk, Virginia. She alleges that she always conducted herself as a dutiful wife, but that, notwithstanding her own good conduct, the defendant drove her from his home and refused to live with her, on several occasions before his final act of abandonment. She furthermore states

that she never had any knowledge of the divorce proceedings, until the month of February, 1881 ; that she was ignorant of his whereabouts from 1870, after he abandoned her in Norfolk, Virginia, until the year 1875, when she casually heard of him in St. Louis, Missouri ; that since 1875, she has written to him at St. Louis, Missouri, several times and received no reply. The plaintiff also charges that the averment made and sworn to by the defendant in his original bill for divorce, to the effect *that he had been abandoned by his wife,* was a *wilful falsehood;* the fact being that he had knowingly and intentionally, without any cause or provocation, abandoned her.

" From the facts alleged by the plaintiff, this would appear to be a case where a court of equity ought to interfere and set aside the original decree of divorce, on the ground that the same was procured by fraud ; but our statute respecting divorce has apparently barred the door to such relief. Section 2184 of the Revised Statutes of 1879, limits the right of appeal from a decree of divorce to the term at which the decree was rendered, and the right to sue out a writ of error to sixty days after the entry of the decree. Section 2185 ( as if to close the way to all redress in matters of divorce, where an appeal is not taken or a writ of error is not sued out in time) provides, that ' *no petition for review of any judgment for divorce rendered in any case arising under this chapter shall be allowed, any law or statute to the contrary notwithstanding.*'

" This proceeding is clearly a '*petition for review*' of the judgment or decree of divorce entered in room No. 1 of this court, on June 18, 1879. Story's Eq. Pl. (10th ed.), sect. 426. This statute went into force in May, 1856, and has been incorporated into each subsequent revision. It is true that the policy of the statute has been criticised by the supreme court in the case of *Mansfield* v. *Mansfield* ( 26 Mo. 163) ; also in the case of *Cole* v. *Cole* ( 3 Mo. Mo. App. 571) ; but its applicability to a case like the present

has never been authoritatively denied, and indeed it cannot be denied, unless the courts hold that the legislature did not intend to deny the right to file a petition for review of judgments for divorce, where the same had been obtained by *fraud*. Such construction of the act in question would incorporate an exception into the statute, which the legislature have not expressed, and, furthermore, it would practically nullify the law; since the great majority of bills for review of judgments of *any* kind, are based upon allegations of fraud in procuring such judgments.

" In the case of *Cole* v. *Cole*, the appellate court, on an inspection of the record in the divorce case, were enabled to say that the decree was utterly void for want of jurisdiction appearing on the face of the record. In *Mansfield* v. *Mansfield*, the action for divorce was begun before the statute (sect. 2185) went into force, and the same was not held applicable to the case then under consideration. But in the present case, the original proceeding appears to have been strictly regular. The petition for divorce contains all the jurisdictional averments; service by publication was duly made; and if the decree is to be impeached, it must be by evidence *dehors* the record.

" I am of the opinion that the legislature intended, by section 2185 of the divorce act, to prohibit courts from entertaining petitions for review (based upon any ground) after the lapse of the term at which the decree was rendered. They probably foresaw that persons once divorced might contract new relations by marriage with innocent third parties, and that to allow such decrees to be impeached, even *for fraud*, years or even months after they were rendered, would be productive of more harm than good. This ruling will not prevent the courts from setting aside decrees of divorce at any time, under the authority of *Cole* v. *Cole*, where the record on its face shows that the court had no jurisdiction over the case, and that the decree is a nullity. But where it is sought to impeach decrees of this charac-

ter by evidence *aliunde*, and for matter not apparent on the face of the record, the courts, in my opinion, have no power under the statute to proceed.

"The demurrer is accordingly sustained, and the motion for alimony is overruled."

We concur in the foregoing opinion, and adopt it as our opinion in this case. We could not say anything expressive of our own views upon the law of this case which would not be substantially a repetition of what is there said. We will add, however, that, taking the facts stated in this petition to be true — and the demurrer admits them to be true, — we regard this as a very hard case. It is the case of a woman whose husband, after having repeatedly repelled her from him, has finally abandoned her and left her and an infant daughter of their marriage, for years in another state, without any support, until, in a state of extreme destitution, she places her cause in the hands of an attorney in this city, where her husband resides, only to find that he had been for two years divorced from her, in a proceeding of which she was wholly ignorant, of which he might easily have notified her, and that he is engaged in business, and possessed of ample means of supporting her and their child. The learned counsel for this lady does not use strong language when he says that she stands here claiming a high and solemn equity at our hands. We regret that the legislature has prohibited us from listening to her petition. We would open the door of the circuit court to her, if the law-making power had not barred it against her. The passage of the statute in question was no doubt dictated by a view of policy such as that stated in the opinion of the circuit judge. How far its workings have justified this policy, is a subject which, in our judgment, demands the earnest attention of the legislature. It is clear that it may, and has frequently, become the means by which husbands, abandoning their wives and children in other jurisdictions, have perpetrated the cruel wrong of obtaining divorces from their

wives, the latter wholly ignorant of the pendency of the proceeding, and innocent of any act or omission which, under our laws, would afford ground for a divorce. In nearly every case where a proceeding for a divorce is instituted against a non-resident defendant, it is practical and easy to give such defendant actual notice of the proceeding; and where this is not done, it would certainly seem that our statutes should be so changed as to allow the defendant a reasonable time within which to reopen the proceedings, upon a proper application and showing. We allow this right in attachment cases, where only rights of property are involved; that it should be denied in cases affecting the dearest interests of life, and the welfare of society itself, seems to us inexplicable.

It is right to say that the demurrer only admits the facts stated in the petition for the purpose of invoking the judgment of the court upon the question of its jurisdiction to reopen the case. If the case could be reopened, the facts might, of course, appear quite different, and the merits of the controversy might be found to be with the husband, and not with the wife. But as the statute prohibits a reopening of the case, the judgment will be affirmed. Judge BAKEWELL concurs; Judge LEWIS is absent.